MGD

**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Glenn Greer, | No. CV 17-02822-PHX-DGC (BSB) |
| Plaintiff, | |
| v. | **ORDER** |
| Pinal County Jail, et al., | |
| Defendants. | |

Plaintiff Glenn Greer, who is currently confined in the Arizona State Prison Complex-Lewis, brought this civil rights action pursuant to 42 U.S.C. § 1983. (Doc. 1.) Defendants move for summary judgment based on failure to exhaust administrative remedies, and Plaintiff opposes.[1] (Docs. 54, 64.) Also pending before the Court is Plaintiff's "Motion to Deny (Dismiss) Defendants' Motion for Summary Judgment." (Doc. 67.) The Court will deny Plaintiff's Motion and will grant in part and deny in part Defendants' Motion.

**I.    Background**

Plaintiff filed his Complaint while incarcerated in the Pinal County Jail (PCJ) against several PCJ employees. Plaintiff's claims relate to searches of his PCJ cell on September 9, 2016 and May 15, 2017, and his placement in solitary confinement on September 9, 2016. (Doc. 1.)

---

[1] The Court provided notice to Plaintiff pursuant to *Rand v. Rowland*, 154 F.3d 952, 962 (9th Cir. 1998) (en banc), regarding the requirements of a response. (Doc. 57.)

On screening under 28 U.S.C. § 1915A(a), the Court determined that Plaintiff stated Sixth Amendment claims regarding the cell searches in Count One against Defendants Sergeant Street and Lieutenant Hoyos; in Count Two against Defendants Security Captain VanGorden and Lieutenant Arnold; and in Count Three against Defendants Street, Hoyos, and Arnold. (Doc. 5 at 7.) The Court also determined that Plaintiff stated a due process claim in Count Four against Defendants VanGorden and Arnold regarding his placement in solitary confinement. (*Id*.) The Court dismissed the remaining Defendants. (*Id*. at 10.)

## II. Plaintiff's Motion to Deny (Dismiss)

Plaintiff argues that Defendants' Reply in support of their Motion for Summary Judgment was due August 25, 2018, but they did not file it until August 27, 2018. (Doc. 67 at 1-2.) Plaintiff asks the Court to deny Defendants' Motion for Summary Judgment with prejudice and grant Plaintiff the relief requested in his Complaint. (*Id*. at 2.)

Plaintiff's Motion is without merit. Plaintiff's Response was served on Defendants on August 10, 2018, when it was entered in the Court's electronic case filing system. (*See* Doc. 64.) The Court permitted Defendants 15 days after service of the Response to file a Reply – until August 25, 2018. (*See* Doc. 57.) Because August 25 was a Saturday, Defendants had until the following Monday, August 27, to file their Reply under Federal Rule of Civil Procedure 6(a)(1)(C). Defendants' Reply filed on August 27, 2018 was timely and the Court will deny Plaintiff's motion.

## III. Legal Standards

### A. Summary Judgment

A court must grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The movant bears the initial responsibility of presenting the basis for its motion and identifying those portions of the record, together with affidavits, if any, that it

believes demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323.

If the movant fails to carry its initial burden of production, the nonmovant need not produce anything. *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Co., Inc.*, 210 F.3d 1099, 1102-03 (9th Cir. 2000). But if the movant meets its initial responsibility, the burden shifts to the nonmovant to demonstrate the existence of a factual dispute and that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmovant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 250 (1986); *see Triton Energy Corp. v. Square D. Co.*, 68 F.3d 1216, 1221 (9th Cir. 1995). The nonmovant need not establish a material issue of fact conclusively in its favor, *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 288-89 (1968); however, it must "come forward with specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (internal citation omitted); *see* Fed. R. Civ. P. 56(c)(1).

At summary judgment, the judge's function is not to weigh the evidence and determine the truth but to determine whether there is a genuine issue for trial. *Anderson*, 477 U.S. at 249. In its analysis, the court must believe the nonmovant's evidence and draw all inferences in the nonmovant's favor. *Id.* at 255. The court need consider only the cited materials, but it may consider any other materials in the record. Fed. R. Civ. P. 56(c)(3).

**B.    Exhaustion**

Under the Prison Litigation Reform Act, a prisoner must exhaust "available" administrative remedies before filing an action in federal court. *See* 42 U.S.C. § 1997e(a); *Vaden v. Summerhill*, 449 F.3d 1047, 1050 (9th Cir. 2006); *Brown v. Valoff*, 422 F.3d 926, 934-35 (9th Cir. 2005). The prisoner must complete the administrative review process in accordance with the applicable rules. *See Woodford v. Ngo*, 548 U.S. 81, 92 (2006). Exhaustion is required for all suits about prison life, *Porter v. Nussle*, 534

1 U.S. 516, 523 (2002), regardless of the type of relief offered through the administrative process, *Booth v. Churner*, 532 U.S. 731, 741 (2001).

The defendant bears the initial burden to show that there was an available administrative remedy and that the prisoner did not exhaust it. *Albino v. Baca*, 747 F.3d 1162, 1169, 1172 (9th Cir. 2014); *see Brown*, 422 F.3d at 936-37 (a defendant must demonstrate that applicable relief remained available in the grievance process). Once that showing is made, the burden shifts to the prisoner, who must either demonstrate that he, in fact, exhausted administrative remedies or "come forward with evidence showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him." *Albino*, 747 F.3d at 1172. The ultimate burden, however, rests with the defendant. *Id.* Summary judgment is appropriate if the undisputed evidence, viewed in the light most favorable to the prisoner, shows a failure to exhaust. *Id.* at 1166, 1168; *see* Fed. R. Civ. P. 56(a).

If summary judgment is denied, disputed factual questions relevant to exhaustion should be decided by the judge; a plaintiff is not entitled to a jury trial on the issue of exhaustion. *Albino*, 747 F.3d at 1170-71. But if a court finds that the prisoner exhausted administrative remedies, that administrative remedies were not available, or that the failure to exhaust administrative remedies should be excused, the case proceeds to the merits. *Id.* at 1171.

**IV. Relevant Facts**

The relevant facts are taken from Defendants' Statement of Facts (Doc. 55) and exhibits, and Plaintiff's Statement of Facts in Opposition (Doc. 65) and exhibits. Plaintiff's Statement of Facts in Opposition is actually a controverting statement of facts, but Plaintiff did not address all of Defendants' Statements of Facts and it appears he only addresses facts that he disputes. Therefore, to the extent Plaintiff failed to controvert

1  Defendants' facts in his Response his Statement of Facts in Opposition, the Court will
2  assume those facts by Defendants are uncontroverted for the purposes of this Order.[2]

Because Plaintiff did not submit a proper separate statement of facts or reference any facts in his Response, Defendants ask that the Court deem their Statement of Facts undisputed. (Doc. 66 at 3.) The Court will deny this request because Plaintiff is proceeding pro se and the Court must "avoid applying summary judgment rules strictly." *Thomas v. Ponder*, 611 F.3d 1144, 1150 (9th Cir. 2010); *Karim-Panahi v. L.A. Police Dep't*, 839 F.2d 621, 623 (9th Cir. 1988). The Court will therefore consider whether the evidence Plaintiff submitted is sufficient to create a genuine issue of material fact. *See* Fed. R. Civ. P. 56(c)(3).

### A. Pinal County Jail Grievance Policy

Plaintiff was incarcerated in the PCJ from October 30, 2015 through February 27, 2018. (Doc. 55 ¶ 1.) The Pinal County Sheriff's Office (PCSO) Policy 4.3, "Inmate Grievances," sets forth the procedure for inmates to submit complaints regarding their conditions of confinement. (*Id.* ¶ 3.) All PCSO inmates receive an explanation of the grievance procedure at intake and a copy of the Inmate Handbook, which provides an overview of the regular and disciplinary grievance processes. Plaintiff received a copy of the Inmate Handbook on October 30, 2015.[3] (*Id.* ¶¶ 12, 15.) Inmates may use the grievance process regardless of disciplinary status, housing location, or classification

---

[2] Plaintiff submitted over 300 pages of exhibits with his Statement of Facts, many of which are not relevant to the issue of exhaustion. There are 20 separate exhibits, and most consist of multiple pages and different types of documents. Plaintiff only cites to exhibits by number and does not direct the Court to where in the exhibit the relevant information is located, which has made the Court's task of determining whether there is a genuine issue of material fact more difficult.

[3] Plaintiff asserts that "no general explanation of grievance procedures is ever given to inmates" and he references his Exhibit 13 "for an accurate statement." (Doc. 65 at 2 ¶ 12.) Plaintiff's Exhibit 13 contains 6 pages from a transcript of a November 18, 2016 hearing in Pinal County Superior Court case No. CR201503228. (Doc. 65-8 at 42-49.) The PCJ grievance procedure is not discussed in the cited exhibit.

level. (*Id.* ¶ 21.) Each grievance must be limited to a single complaint or issue per grievance form, and must include the date, time, and location where the incident occurred, the identity of any person or staff involved, and an explanation of how the situation affected the inmate. (*Id.* ¶ 22.) Inmates may deposit their grievances in the grievance boxes located in every pod or ask that a staff member deposit the grievance. (*Id.* ¶ 23.)

For a non-medical grievance, inmates are encouraged to resolve their complaint through informal means, such as discussion with staff or submission of inmate letters within 5 calendar days of the date of the incident at issue. (*Id.* ¶¶ 25-26.) If the inmate is unable to resolve the complaint informally, he may request an informal meeting with the Unit Supervisor, who shall complete an Informal Resolution Form with the inmate to attempt to resolve the complaint. (*Id.* ¶ 27.) If dissatisfied with the results of the informal meeting with the Unit Supervisor, the inmate may appeal to the Shift Supervisor, who has 5 working days to provide a resolution. (*Id.* ¶ 28.) If the complaint is resolved informally, the Shift Supervisor shall describe the final decision, have the inmate sign the informal resolution form, and forward the original to the grievance officer to log the complaint resolution. (*Id.* ¶ 29.) If the issue cannot be resolved informally, the grievance officer will provide the inmate a Formal Grievance form, and the inmate has 3 days after receiving an unsatisfactory response to file his Formal Grievance. (*Id.* ¶ 31.) If the inmate's complaint remains unresolved after submission of the Formal Grievance, the inmate is entitled to two levels of appeal: a first-level appeal to Command Staff, and a second-level appeal to the Deputy Chief. (*Id.* ¶¶ 32-35.) The decision by the Deputy Chief, or authorized designee, is final. (*Id.* ¶ 37.)

Any disciplinary hearing that results in a finding of guilty may be appealed to the Deputy Chief or designee and must be submitted on a Disciplinary Appeal Form 4.2D within 3 days of notification of the Disciplinary Hearing Findings. (*Id.* ¶¶ 38-39.) The Deputy Chief or designee considers only 3 factors—due process, adequacy of proof, and severity of penalties—and will render a decision within 5 working days. (*Id.* ¶¶ 42-43.)

### B. Plaintiff's Grievances

Defendants submit testimony from S. Carrion, the Grievance Officer at the Pinal County Jail, who asserts that all of Plaintiff's claims in Counts One through Four are grievable under PCSO Policy 4.3. (Doc. 55-1 at 9-11 ¶¶ 52, 54, 58, 63.) Carrion avers that Plaintiff did not submit any informal resolutions, grievances, or appeals regarding any of his claims. (*Id.* ¶¶ 52, 55, 59, 64.) Carrion further avers that to the extent Plaintiff mistakenly believed he was being disciplined when he was placed in administrative segregation, Plaintiff did not attempt to grieve his placement through the disciplinary grievance procedure in Policy 4.2. (*Id.* ¶¶ 65-66.) According to Carrion, Plaintiff did submit various "Inmate Request for Service" forms, but those are not informal resolution or grievance forms, and inmates are specifically informed during orientation that Inmate Request for Service forms are not to be used for grievances. (*Id.* ¶ 68.) Even if Plaintiff contends his Inmate Request for Service forms are informal resolutions or grievances, Carrion maintains that Plaintiff did not appeal any of them to the highest level.[4] (*Id.*)

Plaintiff asserts that he gave his grievance file to his criminal defense lawyer, but the lawyer lost the file and his new appeals lawyer has not been able to locate Plaintiff's grievance documents.[5] (Doc. 65 at 1.) Plaintiff does provide a copy of a letter that he says he submitted to the grievance coordinator on May 19, 2017. (*Id.* at 2 ¶ 16, citing Ex.

---

[4] The Court will address the relevant Inmate Requests for Services submitted by Plaintiff in the Discussion section of this Order.

[5] Plaintiff states that he "repeatedly requested his institutional file" from Defendants and filed several motions to compel discovery "to no avail." (*Id.* at 2.) Plaintiff did file two Motions to Compel. The first Motion (Doc. 42) was denied without prejudice. (Doc. 49.) The second (Doc. 60) was denied without prejudice because Plaintiff failed to certify that he had in good faith conferred or attempted to confer with Defendants. (Doc. 63.) Plaintiff did not thereafter file another Motion to Compel with the required certification. Defendants respond that Plaintiff's claim that he submitted any grievance "is belied by his own evidence," which includes a letter from his attorney who states that she looked at all of the documents in the 3 boxes she received and she "could not find anything documenting your complaints to the jail regarding the search and confiscation of your legal documents while you were in the Pinal County Jail." (Doc. 66 at 10, citing Doc. 65-11 at 14.)

2.) Plaintiff's Exhibit 2 is an undated two-page letter to Grievance Coordinator Sergeant Carrion in which Plaintiff asks for two grievance forms, stating that a search of his cell was conducted on May 15, 2017, resulting in two separate grievance issues—one being a constitutional violation. (Doc. 65-6 at 1.) Plaintiff wrote that he spoke to Captain Flores and Sergeant Street that same day in accordance with Policy 4.3 "w/o resolve," and on May 16, 2017, told Captain Barraza four times that he wanted to begin the grievance process and needed to speak with Sergeant Street or any supervisor, but Street "refused to comply w[ith] policy." (*Id.*) Plaintiff also told Captain Aurego twice that he needed to speak to the Sergeant to begin the grievance process, but "again he told her no, refusing to comply with policy." (*Id.*) After that, Plaintiff wrote two informal resolutions "on regular inmate letters" because he was denied "proper forms" 12 times, and Sergeant Webster took his handwritten informal resolutions, which officially began the grievance process. (*Id.* at 1-2.) Webster told Plaintiff that Street received and accepted the handwritten informal resolutions and "processed them to the next level, shift supervisor Lt. Hoyos." (*Id.* at 2.) According to Plaintiff, Street failed to return copies of his informal resolutions and no one responded to them within the 24 hours prescribed by the policy. (*Id.*)

Plaintiff asserts that after Carrion received his letter, she spoke to Plaintiff on May 20, 2017, and conceded that officers and supervisors "failed in their duties to abide by the grievance policy & procedure," that Plaintiff "had done all due diligence," and she agreed to accept his "informal resolutions as the informal process being exhausted and [to] give [him] a formal grievance form." (Doc. 65 at 4.) Plaintiff states that he submitted his formal grievance with all relevant documentation on May 20, 2017, but Carrion denied the grievance on May 21, 2017, stating the issue was "not grievable."[6] (*Id.*)

---

[6] Defendants ask that the Court not consider Plaintiff's avowals in his Statement of Facts because they are not made under penalty of perjury. (Doc. 66 at 3-4.) The Court declines this request because, again, the Court must construe pro se filings liberally, and because the proper inquiry with respect to a non-movant's evidence at summary judgment is not the admissibility of the evidence's form, but rather whether the contents

**V. Discussion**

Plaintiff does not dispute Defendants' facts involving the grievance process, that he received a copy of the Inmate Handbook outlining the grievance process, that inmates may use the grievance process regardless of disciplinary status, housing location, or classification level, or that he did not file any appeals regarding his claims. Therefore, Defendants have met their initial burden of showing that there was an administrative remedy available to Plaintiff and that Plaintiff did not complete the process. Accordingly, the burden shifts to Plaintiff to either show he exhausted his claims or that the administrative remedy was effectively unavailable to him.

### A. Counts One and Three

Counts One and Three relate to the search of Plaintiff's cell on May 15, 2017. Plaintiff's evidence that he exhausted these claims includes two Inmate Request for Services forms dated May 16, 2017. In one request, Plaintiff wrote that he was attempting to informally resolve an issue regarding the search of his cell on May 15, 2017, during which Defendant Street deemed his various legal supplies, including pens, paper, and envelopes, to be contraband. (Doc. 65-1 at 2 (Pl. Ex. 1).) Plaintiff asked for the return of his legal supplies and the creation of clear guidelines regarding legal supplies provided by an attorney. (*Id.*) A response from Defendant Hoyos states that the contraband found in Plaintiff's cell would not be returned to him, that only legal reading material pertaining to Plaintiff's case is allowed, and that Plaintiff may not receive pens, envelopes, and writing paper mailed from an outside attorney. (*Id.* at 3.)

In the second Inmate Request for Services dated May 16, 2017, Plaintiff stated that he was attempting to informally resolve an issue regarding the violation of his constitutional rights during a cell search on May 15, 2017, in which two officers read, photographed, and confiscated confidential legal materials. (*Id.* at 4.) The Inmate Request is barely legible but appears to say that officers now have intimate knowledge of

---

of the evidence would be admissible at trial. *See Block v. City of Los Angeles*, 253 F.3d 410, 418-19 (9th Cir. 2001); *Fraser v. Goodale*, 342 F.3d 1032, 1036 (9th Cir. 2003); *Fed. Deposit Ins. Corp. v. N.H. Ins. Co.*, 953 F.32d 478, 485 (9th Cir. 1991).

1  Plaintiff's criminal case. (*Id*.) Lieutenant Hoyos responded that "no reading material in
2  accordance with the policy below will be allowed in your possession," and Hoyos quotes
3  from a policy stating that "[d]epictions or descriptions of street gangs and/or Security
4  Threat Groups (STG), and related gang/STG paraphernalia constitute unauthorized
5  material." (*Id*. at 5.)

6  Plaintiff states that his "Informal Resolutions" (referring to his May 16, 2017
7  Inmate Requests for Services) were accepted by grievance coordinators Webster and
8  Carrion. (Doc. 65 at 11 ¶ 57.) Plaintiff next submitted his formal grievance with "all
9  relevant documentation" on May 20, 2017, but Carrion denied the grievance on May 21,
10 2017, stating the issue was "not grievable." (*Id*. at 4 ¶ 54.) Plaintiff asserts that Carrion
11 "acknowledge[d] [Plaintiff's] grievance in Ex. 3." (Doc. 65 at 11 ¶ 57, citing Pl. Ex. 3.)
12 Plaintiff's Exhibit 3 is an Inmate Request for Services dated May 23, 2017, in which
13 Plaintiff says he spoke to Carrion on May 20, 2017 and that he received Carrion's
14 "grievance [illegible] notification on 5-21-17." (Doc. 65-7 at 2.) Plaintiff asks Carrion
15 for clarification of two statements regarding "legal privilege & confidentiality" so that he
16 may prepare his legal defense within the policies and practices of the PCJ. (*Id*.) The
17 response from "S" says "you have received my response to your request for grievance.
18 This matter is closed." (*Id*.)

19 Defendants argue that Inmate Requests for Services are not grievances and
20 Plaintiff may not deviate from the administrative grievance process established by the
21 jail. (Doc. 66 at 7.) Defendants further contend that Plaintiff did not attach a copy of his
22 grievance and "does [not] allege he appealed the findings" that his grievance "was denied
23 because it did not comply with PCJ policy." (*Id*.) Plaintiff, though, does not contend that
24 his grievance was denied because it did not comply with PCJ policy. Rather, Plaintiff
25 asserts that he was told that the issue was not grievable. As to the contents of the
26 grievance, the Court must draw all inferences in Plaintiff's favor, and the inference here
27 is that Plaintiff's May 20, 2017 grievance addressed the same issues as his two May 16,
28

2017 Inmate Requests for Services/Informal Resolutions regarding the May 15, 2017 cell search.

Plaintiff argues that once a grievance is denied as "not grievable," an inmate has no further recourse or appeal opportunity and his administrative remedies are then exhausted. (Doc. 65 at 4.) Defendants did not respond to this argument and have not presented any evidence that administrative remedies remained available to Plaintiff after Plaintiff was informed that his issue was not grievable. An inmate may be excused from exhausting administrative remedies "once he has either received all 'available' remedies at an intermediate level of review or been reliably informed by an administrator that no remedies are available." *Brown*, 422 F.3d at 935; *see also Brown v. Croak*, 312 F.3d 109, 112 (3d Cir. 2002) ("'[a]vailable' means 'capable of use; at hand,'" and if prison officials inform the prisoner that he cannot file a grievance, "the formal grievance proceeding . . . was never 'available' . . . within the meaning of 42 U.S.C. § 1997e"). It was reasonable for Plaintiff to conclude that no further administrative remedies were available based on the response that his issue was not grievable and the later response that the "matter was closed." Accordingly, the Court finds that Plaintiff's failure to exhaust Counts One and Three is excused and the Court will deny summary judgment to Defendants Street, Hoyos and Arnold on Counts One and Three.

**B.      Count Two**

Plaintiff alleges in Count Two that Street and VanGorden oversaw the September 9, 2016 search of his cell and that officers read, photographed, and confiscated privileged legal documents and shared them with the prosecutor in his criminal case. (Doc. 1 at 8.) The only evidence Plaintiff presents regarding his attempt to grieve this search is in his Statement of Facts in Opposition, where he states that once he discovered that privileged legal documents were missing, he "immediately notified Officer Villareal and requested a supervisor to no avail." (Doc. 65 at 6.) Plaintiff states that he requested a supervisor several times on September 9 and 10, 2016 "to address the issue," but his requests were ignored. (*Id.* at 6.) Plaintiff then wrote an Informal Resolution on an

"Inmate Letter/Request" and submitted it to the officer on duty on September 11, 2016, but no one ever responded to his informal resolution, which prevented him from proceeding any further in the grievance process. (*Id*. at 6-7.) Plaintiff says he spoke to VanGorden a couple of weeks later and explained that he was missing legal documents after the search but had not received a seizure notice. (*Id*. at 7.) Plaintiff notes that he had proceeded with the grievance process, but it is not clear that he told VanGorden that. He says VanGorden responded that Plaintiff "would get nothing [and] to quit asking." (*Id*.)

Plaintiff does not provide a copy of the Informal Resolution that he submitted, but he says it is similar to one he presented in Exhibit 1, which relates to the May 15, 2017 cell search, not the September 9, 2016 search. (*Id*. at 6.) Plaintiff provides no other information about this Informal Resolution or what he said in it. As such, Plaintiff's evidence is too vague and conclusory to support that he exhausted his administrative remedies with respect to Count Two. *See, e.g., Nilsson v. City of Mesa*, 503 F.3d 947, 952 n.2 (9th Cir. 2007) ("a conclusory, self-serving affidavit, lacking detailed facts and any supporting evidence, is insufficient to create a genuine issue of material fact") (citation omitted); *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007) ("Conclusory, speculative testimony in affidavits and moving papers is insufficient to raise genuine issues of fact and defeat summary judgment").

Because Plaintiff's evidence fails to show that he either exhausted his administrative remedies or that administrative remedies were effectively unavailable, the Court will grant summary judgment to Defendants Street and VanGorden on Count Two.

### C. Count Four

Plaintiff alleges in Count Four that on September 9, 2016, Defendants VanGorden and Arnold placed him in solitary confinement without any disciplinary due process, as required by jail policy. (Doc. 1 at 16.) Defendants present evidence that on September 9, 2016, Plaintiff was placed in administrative, not disciplinary, segregation for security reasons. (Doc. 65 ¶ 52.) Because Plaintiff was in administrative segregation, he did not

1 receive a disciplinary hearing, but his placement in administrative segregation was
2 grievable under PCSO Policy 4.3. (*Id*. ¶¶ 52-53.)

3 Plaintiff responds that classification and housing are not grievable and there is
4 only an arbitrary process available in which the inmate may submit an inmate letter or
5 request asking to be released from solitary confinement, which Plaintiff says he did five
6 times, but only received a response to his third request. (Doc. 65 at 9, citing Defs.' Ex. 1,
7 Attach. C at 57 and Pl. Ex. 15.) The exhibit cited by Plaintiff is the PCJ Facility
8 Handbook, which states that "Inmates do not have the right to appeal and/or grieve
9 classification decisions," but an inmate who disagrees with a classification decision can
10 challenge the decision by completing an Inmate Request Form explaining the reasons the
11 inmate is challenging the classification decision along with an explanation of what the
12 inmate believes to be the correct classification. (Doc. 55-1 at 57.) The Classification
13 Supervisor is to review the Inmate Request and determine whether there is a compelling
14 reason to modify the classification and, if there is, initiate a classification reassessment.
15 (*Id*.) If there is not a compelling reason, then the Classification Supervisor "should
16 provide a written notice to the inmate of the decision," "document the decision in the
17 classification file," and submit a copy of the action taken to the Deputy Chief or designee
18 for review, who has final authority in resolving classification issues. (*Id*.)

19 Plaintiff's Exhibit 15 is an Inmate Request for Services dated February 10, 2017,
20 addressed to VanGorden. (Doc. 65-10 at 2.) Plaintiff wrote that his request had two
21 purposes—to "appeal [his] Ad Seg placement" and to start a dialogue to make changes to
22 the administrative segregation policy to "some sort of progressive phase program." (*Id*.)
23 Plaintiff attached a multi-page "Ad Seg Phase Program Proposal" that would allow
24 inmates in administrative segregation to transition to the general population. (*Id*. at 3-6.)
25 The response from VanGorden thanks Plaintiff for the proposal, but states that "changes
26 at this time will not occur." (*Id*. at 2.)

27 Defendants reply that Plaintiff conflates housing with classification, but even if
28 Plaintiff were challenging a classification decision, he was required to comply with

Policy 4.3 and follow the grievance process regarding classification decisions. (Doc. 66 at 9-10, citing Doc. 55-1 at 57.)

There is a disputed question of fact as to which administrative remedy Plaintiff should have used to challenge his placement in administrative segregation—Policy 4.3 as asserted by Defendants, or the Facility Handbook classification review process as asserted by Plaintiff. But even if the Court assumes that the classification review process is the appropriate remedy, Plaintiff's February 10, 2017 Inmate Request for Services does not comply with the Handbook's requirement that he explain the reasons why he is challenging the classification or what Plaintiff believes to be the correct classification. Plaintiff's Inmate Request says only that his purpose is to "appeal [his] Ad Seg placement" and to present his proposal for changes to the administrative segregation policy. This Inmate Request does not provide the required information for appealing his placement in administrative segregation under the Handbook, and Plaintiff does not give any information about the other four Inmate Requests he says he submitted to show that he complied with the process. Thus, even if Plaintiff has identified the correct grievance process, his evidence fails to demonstrate that he exhausted his administrative remedy with respect to his placement in administrative segregation. The Court will grant summary judgment to Defendants VanGorden and Arnold as to Count Four.

**IT IS ORDERED:**

(1) The reference to the Magistrate Judge is withdrawn as to Defendants' Motion for Summary Judgment (Doc. 54) and Plaintiff's Motion to Deny (Dismiss) Defendants' Motion for Summary Judgment (Doc. 67).

(2) Plaintiff's Motion to Deny (Dismiss) Defendants' Motion for Summary Judgment (Doc. 67) is **denied**.

(3) Defendants' Motion for Summary Judgment (Doc. 54) is **granted in part and denied in part** as follows:

(a) The Motion is **granted** as to Counts Two and Four and Counts Two and Four and Defendant VanGorden are **dismissed without prejudice** for failure to exhaust administrative remedies.

(b) The Motion is **denied** as to Counts One and Three.

(4) The remaining claims are Count One against Defendants Street and Hoyos and Count Three against Defendants Street, Hoyos and Arnold.

Dated this 9th day of November, 2018.

*David G. Campbell*

David G. Campbell
Senior United States District Judge